UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x

FLYFIT HOLDINGS LLC,

      Plaintiff,

-- against --

MICHAEL DAY, PAMELA TARQUIN,
AND COLIN DAY,

      Defendants

-----------------------------------------------------x

21 Civ. 00274

**COMPLAINT**

**JURY TRIAL DEMAND**

## COMPLAINT

Plaintiff FlyFit Holdings LLC ("FlyFit NY"), by and through the undersigned attorneys, hereby alleges against Defendants Michael Day, Pamela Tarquin, Colin Day ("Defendants") hereby alleges the following:

## PARTIES

1.    On or about September 22, 2016, Plaintiff FlyFit NY was established as a limited liability company under the laws of Delaware.

2.    At all relevant times herein, FlyFit NY maintained its principal place of business in the state of New York at 221 West 29th Street in New York, New York 10001.

3.    Upon the LLC's formation, non-party Brian Chappon ("Chappon") was the only member (*i.e.*, owner) of FlyFit NY.

4.    Upon formation and at all relevant times herein, Chappon served as the LLC's managing member with the title of "President."

1

5. At all times relevant herein, FlyFit NY had a joint venture with non-party FlyFit Holdings Limited ("FlyFit UK"), a private limited company established under the laws of the United Kingdom on May 20, 2016.

6. At all relevant times herein, Chappon was also Chief Executive Officer ("CEO") of FlyFit UK. Only Chappon had the legal authority to represent FlyFit UK in its operations.

7. The purpose of the joint venture between FlyFit NY and FlyFit UK was to create fitness studios and wellness facilities in international airport terminals under the name "FlyFit Global" and other FlyFit-related marks (*e.g.*, "Fly Healthy" and "Fly Fresh").

8. On or about September 28, 2016, Defendants Michael Day, Pamela Tarquin and Colin Day became shareholders in FlyFit UK as 15% owners of outstanding shares in the UK company.

9. Upon information and belief, Defendants Michael Day, Pamela Tarquin, and Colin Day are citizens of the state of Colorado residing in Denver.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a) (diversity) because Plaintiff and Defendants are citizens of different States and the amount in controversy exceeds the sum or value of $75,000.

11. Venue is proper under 28 U.S.C. § 1391(b) in this judicial district because it is where a substantial part of the events or omissions giving rise to Plaintiff's claim occurred.

## ADDITIONAL FACTUAL ALLEGATIONS

12. On or about January 9, 2017, Flyfit UK executed a contract with Heathrow Airport Limited ("Heathrow Airport") that leased designated areas in Terminal 2 and Terminal 4

to FlyFit UK so that FlyFit UK and FlyFit NY could open a "FlyFit Wellness & Fitness Studio" in the airport.

13. Terminal 2, commonly referred to as "The Queen's Terminal," has approximately 16 million passengers traveling through it each year.

14. Heathrow Airport promoted the FlyFit-branded venture as the world's first wellness studio in an airport (*see, e.g.*, https://twitter.com/heathrowairport/status/1010888851907203072 stating " . . . we do have a FlyFit Wellness & Fitness Studio coming soon (T2, after security).  More info can be found here: https://bit.ly/2yCpNbZ. We apologise that there's no option for you to exercise today whilst at the airport.").

15. The contract between Heathrow Airport and FlyFit UK was the keystone to developing the FlyFit joint venture and FlyFit-related marks as it would create an established fitness studio in one of the leading airports in the world.

16. Following the opening of the first site at Heathrow Airport, FlyFit NY expected to open additional sites at John F. Kennedy Airport in New York, Los Angeles International Airport, O'Hare International Airport in Chicago and Hartsfield–Jackson Atlanta International Airport.  Facilities in U.S. airports were to be owned by Plaintiff FlyFit Holdings LLC.

17. In April 2019, Defendants contacted Heathrow Airport and fraudulently represented that they were part of a group of "majority shareholders" in FlyFit UK and FlyFit NY.

18. Following a request from Defendants' attorney, L. Norton Cutler at Perkins Coie LLP, in which he made the fraudulent representation that Defendants were part of a group of "majority shareholders," Heathrow Airport refused to communicate with Brian Chappon, the only person legally authorized to act on behalf of FlyFit UK or FlyFit NY.

19. Heathrow further informed Chappon that Defendants through their U.S. counsel had directed all communications to be only with Elliot Hawkins, a person who had no legal authority to represent either FlyFit UK or FlyFit NY.

20. At all relevant times herein, Chappon was the majority owner of FlyFit NY.

21. At all relevant times herein, Chappon was the majority owner of FlyFit UK.

22. At all relevant times herein, Defendants were minority owners of FlyFit UK and lacked the legal authority to represent either company.

23. Any statement by Defendants that claimed they had the authority to act for either company, particularly with respect to Heathrow Airport, was fraudulent.

24. The damage caused by Defendants' fraudulent statements and conduct was extensive. Over $600,000 of investment capital by Chappon and other shareholders was lost, as well as relationships with airports such as John F. Kennedy Airport in New York, Los Angeles International Airport, O'Hare International Airport in Chicago and Hartsfield–Jackson Atlanta International Airport.

25. Furthermore, Chappon had invested four years of time as well as capital investment working to secure global press and media along with brand and credit card partnerships. These partnerships were destroyed by Defendants' fraudulent statements and conduct. Investment capital and credibility by incoming investors such as Afar.com and Jared and Dennis Vogt amounting to approximately $1,000,000 were also lost due to the fraudulent statements and conduct of Defendants.

**FIRST CLAIM FOR RELIEF**
(Tortious Interference With Prospective Business Relations)

26. Plaintiff repeats and realleges allegations in paragraphs 1-25 above as if fully set forth herein.

26. Plaintiff's claim for tortious interference with prospective business relations is brought under New York law against Defendants Michael Day, Pamela Tarquin and Colin Day.

27. Defendants knew FlyFit NY had a business relationship with FlyFit UK and intentionally interfered with it.

28. Defendants used dishonest, unfair, or improper means, or acted solely out of malice, in interfering with FlyFit NY's business relationship with FlyFit UK.

29. Defendants' interference with FlyFit NY's business relationship with FlyFit UK caused injury to that relationship and particular injury to FlyFit NY.

30. Defendants are liable for the damages to FlyFit NY resulting from the loss of benefit of the relationship with FlyFit UK.

31. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff FlyFit Holdings LLC respectfully demands a jury trial on all issues of fact and damages alleged herein.

**WHEREFORE**, Plaintiff seek judgment as follows:

(a) Declare that Defendants committed tortious interference with Plaintiff FlyFit Holdings LLC's prospective business relations;

(b) Award Plaintiff FlyFit Holdings LLC compensatory damages including lost profits for the harm caused by Defendants' unlawful conduct;

(c) Award Plaintiff FlyFit Holdings LLC punitive damages in an amount to be determined at trial;

(d) Enjoin Defendants from further interference with Plaintiff FlyFit Holdings LLC's prospective business relations; and

(e) Award such additional relief as the interest of justice may require.

Dated:  New York, New York
        January 12, 2021

The Curlew Law Firm
Curlew New York LLC

<u>By</u>:  */s/*  Isaac Myers III
Isaac Myers III
Attorney for Plaintiff
188 Grand St., Suite 337
New York, NY 10013
Isaac@CurlewLaw.com
Ph: (212) 804-8655
